UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

CAROL TILLY FEE                                              CIVIL ACTION

VERSUS                                                       NUMBER: 07-3782

MICHAEL J. ASTRUE, COMMISSIONER                              SECTION: "A"(5)
OF SOCIAL SECURITY ADMINISTRATION

**REPORT AND RECOMMENDATION**

Pursuant to 28 U.S.C. §636(b) and Local Rule 73.2E(B), this matter comes before the Court on the parties' cross-motions for summary judgment following a decision of the Commissioner of the Social Security Administration denying plaintiff's application for Disability Insurance Benefits ("DIB"). (Rec. docs. 10, 12).

Carol Tilly Fee, plaintiff herein, protectively filed the subject application for DIB on December 15, 2005, alleging disability as of January 1, 1996. (Tr. pp. 53-58). In a Disability Report dated June 13, 2006, interstitial cystitis (IC"), Parkinson's disease, and high blood pressure were identified as the conditions resulting in plaintiff's inability to work. (Tr. pp. 61-67). Plaintiff's disability insured status had expired on December 31, 2000. (Tr. pp. 33-34, 59-60). Plaintiff's application for DIB was initially denied under the Disability Redesign Prototype Process, following which she requested a hearing de novo before an Administrative Law Judge ("ALJ"). (Tr. pp. 33-34, 49). That hearing went forward on October 12, 2006 at which plaintiff, who was represented by counsel, appeared and testified. (Tr. pp. 454-475). On October 27, 2006, the ALJ issued a written decision in which he concluded that plaintiff had not established that she suffered from a

severe impairment prior to the date that her disability insured status expired. (Tr. pp. 17-25). The Appeals Council ("AC") ultimately denied plaintiff's request for review of the ALJ's decision on March 28, 2007, thus making the ALJ's decision the final decision of the Commissioner. (Tr. pp. 12-14). It is from that unfavorable decision that the plaintiff seeks judicial review pursuant to 42 U.S.C. §404(g).

In her cross-motion for summary judgment, plaintiff essentially argues that the ALJ erred in concluding that she did not suffer from a severe impairment prior to the date that her insured status expired. (Rec. doc. 10-3, pp. 4-5). Relevant to a resolution of that claim are the following findings made by the ALJ:

> 1. [t]he claimant last met the insured status requirements of the Social Security Act on December 31, 2000.
>
> 2. [t]he claimant did not engage in substantial gainful activity during the period from her alleged onset date of January 1, 1996 through her date last insured of December 31, 2000 (20 CFR 404.1520(b) and 404.1571 *et seq.*).
>
> 3. [t]hrough the date last insured, the claimant had the following medically determinable impairment: Parkinson's disease and hypertension (20 CFR 404.1520(c)).
>
> 4. [t]hrough the date last insured, the claimant did not have an impairment or combination of impairments that significantly limited her ability to perform basic work-related activities for 12 consecutive months; therefore, the claimant did not have a severe impairment or combination of impairments (20 CFR 404.1521).
>
> 5. [t]he claimant was not under a "disability," as defined in the Social Security Act, at any time from January 1, 1996, the alleged onset date, through December 31, 2000, the date last insured (20 CFR 404.1520(c)).

(Tr. pp. 22-25).

Judicial Review of the Commissioner's decision to deny DIB is limited under 42 U.S.C. §405(g) to two inquiries: (1) whether substantial evidence of record supports the Commissioner's

decision, and (2) whether the decision comports with relevant legal standards. Anthony v. Sullivan, 954 F.2d 289, 292 (5th Cir. 1992); Villa v. Sullivan, 895 F.2d 1019, 1021 (5th Cir. 1990); Fraga v. Bowen, 810 F.2d 1296, 1302 (5th Cir. 1987). If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. §405(g); Richardson v. Perales, 402 U.S. 389, 91 St.Ct. 1420 (1971). A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings exist to support the Commissioner's decision. Johnson v. Bowen, 864 F.2d 340, 343-44 (5th Cir. 1988). Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. Jones v. Heckler, 702 F.2d 616, 620 (5th Cir. 1983). The Court may not reweigh the evidence or try the issues de novo, nor may it substitute its judgment for that if the Commissioner. Cook v. Heckler, 750 F.2d 391, 392 (5th Cir. 1985). Conflicts in the evidence are for the Commissioner to resolve, not the courts. Patton v. Schweiker, 697 F.2d 590, 592 (5th Cir. 1983).

A claimant seeking DIB bears the burden of proving that she is disabled within the meaning of the Social Security Act. Harrell v. Bowen, 862 F.2d 471, 475 (5th Cir. 1988). Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which ... has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(). Once the claimant carries her initial burden, the Commissioner then bears the burden of establishing that the claimant is capable of performing substantial gainful activity and is, therefore, not disabled. Harrell, 862 F.2d at 475. In making this determination, the Commissioner utilizes the 5-step sequential analysis set forth in 20 C.F.R. §404.1520, as follows:

     1. an individual who is working and engaging in substantial gainful activity will not be found disabled regardless of the medical finding.

     2. an individual who does not have a "severe impairment" will not be found to be disabled.

     3. an individual who meets or equals a listed impairment in Appendix 1 of the Regulations will be considered disabled without consideration of vocational factors.

     4. if an individual is capable of performing the work that she has done in the past, a finding of "not disabled" must be made.

     5. if an individual's impairment precludes her from performing her past work, other factors, including age, education, past work experience, and residual functional capacity, must be considered to determine if other work can be performed.

On the first 4 steps of the analysis, the claimant bears the burden of proving that she is disabled. Bowen v. Yuckert, 482 U.S. 137, 146 n. 5, 107 S.Ct. 2287, 2294 n. 5 (1987). A finding that the claimant is disabled or not disabled at any point in the sequential review process is conclusive and terminates the Commissioner's analysis. Wren v. Sullivan, 925 F.2d 123, 125-26 (5th Cir. 1991).

Plaintiff was 57 years of age at the time of the administrative hearing that was held on October 12, 2006. She had attended 3 years of college and had past relevant work experience as a secretary and a teacher. Plaintiff's attorney opened the hearing by arguing that disability would be established based on plaintiff's testimony regarding the combination of her impairments and in reliance on SSR 02-2p, the Social Security Ruling on IC that went into effect on November 5, 2002. After hearing counsel's argument, the ALJ interjected that the medical evidence pertaining to the relevant time period was "sparse," consisting of only some treatment records from 1994, 1998, and 2000. Plaintiff then took the stand and was questioned by the ALJ. She first testified to the demands of her most recent job as a secretary/service representative at the printing company that was owned by her husband. Because it was a family-owned business, various accommodations had been made for her. Plaintiff testified that her condition worsened in 1992 after undergoing surgery to the head

area.  She testified that she had been treated by Drs. Sistrunk and Colfry numerous times over the years who were unable to properly diagnose her condition and who ran various tests that often came back as negative.  For his part, the ALJ questioned plaintiff about the time that had elapsed between the alleged onset date and the date that plaintiff applied for DIB.  In response to the ALJ's inquiry, plaintiff testified that she initially believed that applying for Social Security benefits was a lengthy process but that she had been encouraged to apply subsequent to Hurricane Katrina.

Plaintiff was then tendered to her attorney for further questioning.  Upon being queried by counsel, plaintiff testified to a long history of bladder infections that she had tried to work through over the years.  She stated that her condition worsened after her last child was born when she was 40 and that she would have bladder infections on an almost daily basis.  In terms of treatment, plaintiff would call Dr. Sistrunk who, in turn, would order prescription medications for her via phone.  For worse episodes, plaintiff would have to bring a urine sample to the doctor for analysis.  When she did have exacerbations of her condition, plaintiff would experience back pain, pressure in the legs, frequent urination, and painful sex and would be unable to squat.  At some point, one of her doctors believed her condition was menopause-related and he prescribed vaginal cream for her use.  Eventually, Dr. Sistrunk referred plaintiff to Dr. Colfry who also had a difficult time diagnosing plaintiff's condition.  All of this resulted in plaintiff spending less and less time at work.  She would experience lower back pain after sitting for 1 hour, swelling and severe pain in the vaginal area, and leg spasms.  Sitting, standing and walking became uncomfortable and plaintiff would have to use the bathroom every few minutes.  At times, she would wear protective garments or bring a second pair of pants to work in case she had an accident.  Plaintiff testified that her spasms were relieved if she could take her prescribed medication and then lie down for an hour twice per day.  She sometimes

worked from her bed with her legs elevated and a heating pad on the effected area. Unfortunately, her symptoms continued to worsen, resulting in her spending less time at work and, ultimately, being terminated.

Following this testimony, plaintiff's attorney argued that although plaintiff's treatment had been sporadic over the years, doctors had been unable to properly diagnose her condition which was a relatively newly recognized disorder. Plaintiff then testified further that Dr. Colfry had performed a cystoscope which revealed a bleeding ulcer in the bladder. Following that procedure, numerous other medications were tried and at some point it was decided that plaintiff had symptoms of IC. She then contacted the Interstitial Cystitis Association for guidance on the best treatment options for her condition. However, even a decreased dosage of medication that other IC patients reported was effective left plaintiff so groggy that she could not drive and had to rely on friends to prepare meals for her and to shuttle her children to and from school. (Tr. pp. 454-475).

The medical evidence of record documents a long history of urinary problems dating back to at least 1992. As testified to by plaintiff, she was initially treated by her OB/GYN, Dr. Sistrunk, for her recurring difficulties who later referred her to Dr. Alfred Colfry, a urologist. On June 22, 1992, Dr. Colfry reported recurrent urinary infections and chronic trigonitis as revealed through cystocopy. Macrodantian was prescribed to treat plaintiff's condition as well as other medications, including Cipro and Pyridium. (Tr. p. 155-156). One of Dr. Colfry's subsequent treatment notes indicates that plaintiff was "almost constantly" on medication and "gets cystitis right away." Back pain was complained of on that day. (Tr. p. 154). Plaintiff saw Dr. Colfry again on May 11, 1994 for a history of recurring lower abdominal discomfort with pressure and frequency and left lower abdominal pain on the eleventh day of her cycle. Yet, a urine culture was negative and cystoscopy was

unremarkable. (Tr. p. 152). On March 27, 1995, a doctor from Hunter Medical Systems noted plaintiff's 3 year history of bladder infections and plaintiff reported that Dr. Colfry had located an ulcer in her bladder. Menopause was mentioned as the source of plaintiff's problems. (Tr. p. 146). Kenalog, Premarin, and Provera were prescribed for what was called a possible yeast infection on September 26, 1995. (Tr. p. 145). On April 19, 1996, Dr. Colfry treated plaintiff for another urinary tract infection. (Tr. p. 151). She still had pain and discomfort and tenderness and soreness to the vaginal area on May 14, 1996. (Tr. p. 144). Additional medications were dispensed from 1996 through 2000. (Tr. pp. 138-143). The earliest of these medical records, particularly those of Dr. Colfry, were extremely brief in nature.

As noted by the ALJ, subsequent to the expiration of plaintiff's insured status on December 31, 2000, she was seen again by Dr. Colfry for complaints of urgency and post-coital discomfort and was diagnosed with yet another urinary tract infection. (Tr. p. 110). Following another cystoscopy in early 2001, Dr. Colfry made a specific diagnosis of IC. Vioxx and Urisal were prescribed. (Tr. p. 103).

Following the rendition of the ALJ's decision on October 27, 2006, plaintiff's counsel provided the AC with a treatment note from Dr. Susan McSherry and additional documentation from Drs. Colfry and Sistrunk. Dr. McSherry evaluated plaintiff on December 11, 2006 and reviewed the earlier treatment records of Drs. Colfry and Sistrunk prior to rendering her lengthy, comprehensive report. There, Dr. McSherry remarked that the records of Dr. Colfry were "sketchy and minimal" with "minimal documentation of the patient's symptoms." Dr. McSherry recalled the various modes of treatment that had been tried over the years and the 1992 cystoscopy results that demonstrated "chronic trigonitis, which is an old term that is considered interchangeable with interstitial cystitis."

The doctor also observed that the diagnosis of IC was one "of exclusion and based on symptoms" and she criticized Dr. Colfry for "not mak[ing] the appropriate diagnosis." Consistent with her testimony, plaintiff advised Dr. McSherry that her symptoms flared to severe and unremitting between 1994 and 1996. Toward the end of that time period, plaintiff was attempting to work out of her home from bed but the effect on her workplace attendance was such that she was let go from her husband's business and was replaced with an employee who could function full-time. Plaintiff's symptoms at the time of Dr. McSherry's evaluation were "improved somewhat" but were still significant. The assessment was: 1) symptoms of IC of many years; 2) chronic pelvic pain, 10 out of 10 more than 50% of the time; 3) depression; 4) incontinence, most likely due to severe IC; and, 5) severe frequency secondary to IC. Plaintiff was continued on Valium and Urised and was tried on Ultram, Lexapro, Enablex, VESIcare, and Sanctura. At the conclusion of her report, Dr. McSherry stated that "[i]t is apparent this patient was diagnosed with interstitial cystitis in 1992 and became disabled due to increasing symptoms as of 1994 to 1996 and continues to be disabled due to severe symptoms." (Tr. pp. 269-272).

For his part, Dr. Colfry summarized his treatment of plaintiff from June 15, 1992 to May 24, 2006 in a 1-page letter dated April 6, 2007. (Tr. p. 278). In his correspondence of May 29, 2007, Dr. Sistrunk expressed amazement at the lengthy and largely unsuccessful treatment history of plaintiff which resulted from the dearth of knowledge within the medical profession regarding IC. The doctor recalled that plaintiff's symptoms were especially severe throughout 1994 to 1998 and plaintiff experienced increasing depression because of disabling pain and an inability to perform her work properly. (Tr. pp. 279-281). Tellingly, also presented to the AC was a letter addressed to plaintiff from her most recent employer dated September 30, 1995 which reads as follows:

8

> This letter is to inform you of our intent to terminate your employment. I regret that this action is necessary but I have no option. For quite some time now you have been unable to perform your office duties in an acceptable manner. Either you are asking to do your work from your home or on those rare occasions that you are able to make it to the office you are here for such a short time and it seems that for a good portion of that time you are in the restroom.
>
> Due to your past years employment I am giving you to the end of the year to make arrangements to find new employment. Again I regret having to take this action but I feel that it is the best thing for the company. Thank you for your efforts during your time of illness.

(Tr. p. 302).

Additional correspondence submitted to the AC adds further corroboration to plaintiff's hearing testimony that the increase in her symptoms resulted in her spending less and less time at work and ultimately led to her termination effective December 31, 2005. (Tr. p. 282).

Plaintiff argues that ALJ erred in concluding that she did not suffer from a severe impairment at the second step of the 5-step sequential analysis. A "severe impairment" is defined as any impairment or combination of impairments which significantly limits one's physical or mental ability to do basic work activities. 20 C.F.R. §404.1520(c); Shipley v. Secretary of Health and Human Services, 812 F.2d 934, 935 (5th Cir. 1987). Stated otherwise, an impairment can be considered as not severe only if it is a slight abnormality having such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of her age, education, or work experience.[1]/ Anthony, 954 F.2d at 293; Stone v. Heckler, 752 F.2d 1099, 1101

---

[1]/ The current standard is a mere clarification of the 1968 Regulation which defined a non-severe impairment as "... a slight neurosis, slight impairment of sight or hearing, or other slight abnormality or combination of abnormalities." 20 C.F.R. §404.1502(a)(1968). This is made clear in cases such as Estran v. Heckler, 745 F.2d 340 (5th Cir. 1984) in which the Fifth Circuit held that the 1968 definition of non-severity is incorporated into, not supplanted by, the current standard. Failure to consider the current Regulation in light of the one existing in 1968 has been found to constitute error and to justify a remand. Davis v. Heckler, 759 F.2d 432, 435-

9

(5th Cir. 1985); Estran v. Heckler, 745 F.2d 340, 341 (5th Cir. 1984).

Having reviewed the administrative record in its entirety, the Court believes that the ALJ may have concluded his consideration of plaintiff's application for DIB prematurely at the second step of the 5-step sequential analysis. The regulations define a "severe impairment" narrowly, as an "impairment or combination of impairments which significantly limits [one's] physical or mental ability to do basic work activities ..." 20 C.F.R. §404.1520(c) (emphasis added). However, the Fifth Circuit has disapproved of the use of the Regulations to summarily dismiss claims at this early stage, without consideration of the remaining steps in the sequential analysis. Anthony, 954 F.2d at 293-294; Stone, 752 F.2d at 1102-04. That is, the Fifth Circuit has construed the Regulations broadly and has demanded that the literal language of the Regulations be read in light of the 1968 standard, which defined a non-severe impairment as a "slight neurosis, slight impairment of sight or hearing, or other slight abnormality or combination of abnormalities ..." Estran, 745 F.2d at 341. As a result, any claim based on an impairment which is more than a "slight abnormality" will succeed through step 2 of the 5-step analysis.

Admittedly, when the ALJ issued his written decision, he did not have before him the additional reports of Drs. Sistrunk and Colfry which supplemented their earlier clinical findings. The ALJ also did not have the benefit of Dr. McSherry's comprehensive report in which she pointed out the lengthy, unsuccessful treatment of plaintiff and the misdiagnoses of her treating physicians. IC is a unique condition, the effects of which were only recently recognized by the Administration itself, SSR 02-2p, and the case law has come to recognize that it can indeed cause nonexertional limitations

---

36 (5th Cir. 1985)(and cases cited therein disapproving of the summary rejection of the disability claims at the second step of the sequential analysis).

such as pain, <u>Caudill v. Barnhart</u>, 2006 WL 2919010 at *11 (W.D. Va. 2006), and the need to frequent the restroom more often than scheduled breaks allow. <u>Hall v. Commissioner of Social Security</u>, 218 Fed.Appx. 212, 217 (3rd Cir. 2007). The Administration's own medical consultant, whose opinions are typically of a conservative nature, reviewed plaintiff's file and, even without the benefit of the additional documentation submitted to the AC, concluded that plaintiff was limited to sedentary-level work. (Tr. pp. 121-128). The information supplied by plaintiff's former employer confirms her testimony that the limitations resulting from her IC did, in fact, result in her termination from employment. The Court is thus unable to say that plaintiff's impairments are nothing more than slight abnormalities having only a minimal effect on her ability to work. Accordingly, it will be recommended that plaintiff's case be remanded to the Commissioner for further consideration of plaintiff's application for DIB beyond the second step of the 5-step sequential analysis.

## **RECOMMENDATION**

For the foregoing reasons, it is recommended that this matter be remanded to the Commissioner for further consideration of plaintiff's application for DIB beyond the second step of the sequential analysis set forth in 20 C.F.R. §404.1520.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation contained in a magistrate judge's report and recommendation within 10 days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a

failure to object.  <u>Douglass v. United Services Auto. Assoc.</u>, 79 F.3d 1415 (5th Cir. 1996) (en banc).

New Orleans, Louisiana, this __8th__ day of ___September___, 2008.

*[signature]*
ALMA L. CHASEZ
UNITED STATES MAGISTRATE JUDGE
